# United States District Court
### EASTERN DISTRICT OF TEXAS
### SHERMAN DIVISION

| | |
|---|---|
| THOMPSON COMPANY, INC., d/b/a § <br> THOMPSON EHLE COMPANY, § <br> *Plaintiff,* § <br> § <br> v. § <br> § <br> PARIS LAKES MEDICAL ASSETS, LLC; § <br> and PARIS LAKES MEDICAL CENTER, § <br> LLC, § <br> *Defendants.* § | Civil Action No.  4:20-cv-390 <br> Judge Mazzant |

### **MEMORANDUM OPINION AND ORDER**

Pending before the Court is Plaintiff Thompson Company, Inc., d/b/a Thompson Ehle Company's Motion for Summary Judgment (Dkt. #23). Having considered the motion and relevant pleadings, the Court finds the motion should be **GRANTED.**

### BACKGROUND

This lawsuit arises out of a project to develop a medical facility—Paris Lakes Medical Center—in Paris, Texas (the "Project") (Dkt. #1 ¶ 10; Dkt. #6 ¶ 10). Plaintiff Thompson Company, Inc.'s, d/b/a Thompson Ehle Company ("Thompson") provides engineering services for construction projects, including the Project here (Dkt. #1 ¶ 14). Thompson entered into a series of written agreements with Defendant Paris Lakes Medical Assets, LLC ("PLM Assets") to provide services for the Project (the "Agreements") (Dkt. #1 ¶ 15). Defendant Paris Lake Medical Center, LLC ("PLM Center") owns the real property the Project is built on (the "Property"). PLM Center "is effectively controlled by the same ownership as PLM Assets." (Dkt. #1 ¶ 39).

Under the Agreements, PLM Assets agreed to pay Thompson a lump sum price, plus expenses, for its engineering services (Dkt. #1 ¶ 16). Thompson provided the services as agreed

and submitted invoices accordingly (Dkt. #1 ¶ 18). However, PLM Assets failed to pay (Dkt. #1 ¶ 18).

On March 12, 2019, Thompson filed an affidavit (the "Affidavit") in Lamar County, Texas claiming a statutory lien on the Property pursuant to Chapter 53 of the Texas Property Code in the amount of $232,699.22 (the "Lien") (Dkt. #1 ¶ 35).

On May 12, 2020, Thompson sued PLM Assets and PLM Center (collectively, the "PLM Defendants") for breach of contract, or in the alternative, quantum meruit, to recover the unpaid amount of $232,699.22 (Dkt. #1 ¶¶ 26–31). Thompson also seeks declaratory relief, specifically: (1) a declaration from the Court that the Lien is valid; (2) a foreclosure on the Lien; and (3) an order of sale of the Property (Dkt. #1 ¶¶ 32–42). PLM Defendants answered on July 27, 2020 (Dkt. #6).

On June 9, 2021, Thompson moved for summary judgment (Dkt. #23). PLM Defendants failed to timely respond, so the Court ordered PLM Defendants to respond by August 11, 2021 (*See* Dkt. #25). PLM Defendants never filed a response. However, Chambers received a telephone call from PLM Defendants' counsel stating their non-opposition to the motion for summary judgment (Dkt. Entry, Aug. 19, 2021).

## LEGAL STANDARD

The purpose of summary judgment is to isolate and dispose of factually unsupported claims or defenses. *See Celotex Corp. v. Catrett*, 477 U.S. 317, 327 (1986). Summary judgment is proper if the pleadings, the discovery and disclosure materials on file, and any affidavits "[show] that there is no genuine issue as to any material fact and that the movant is entitled to judgment as a matter of law." FED. R. CIV. P. 56(a). A dispute about a material fact is genuine "if the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Anderson v. Liberty*

*Lobby, Inc.*, 477 U.S. 242, 248 (1986).  The trial court must resolve all reasonable doubts in favor of the party opposing the motion for summary judgment.  *Casey Enters., Inc. v. Am. Hardware Mut. Ins. Co.*, 655 F.2d 598, 602 (5th Cir. 1981) (citations omitted).  The substantive law identifies which facts are material.  *Anderson*, 477 U.S. at 248.

The party moving for summary judgment has the burden to show that there is no genuine issue of material fact and that it is entitled to judgment as a matter of law.  *Id.* at 247.  If the movant bears the burden of proof on a claim or defense on which it is moving for summary judgment, it must come forward with evidence that establishes "beyond peradventure *all* of the essential elements of the claim or defense."  *Fontenot v. Upjohn Co.*, 780 F.2d 1190, 1194 (5th Cir. 1986).  But if the nonmovant bears the burden of proof, the movant may discharge its burden by showing that there is an absence of evidence to support the nonmovant's case.  *Celotex*, 477 U.S. at 325; *Byers v. Dallas Morning News, Inc.*, 209 F.3d 419, 424 (5th Cir. 2000).  Once the movant has carried its burden, the nonmovant must "respond to the motion for summary judgment by setting forth particular facts indicating there is a genuine issue for trial."  *Byers*, 209 F.3d at 424 (citing *Anderson*, 477 U.S. at 248–49).

The nonmovant must adduce affirmative evidence.  *Anderson*, 477 U.S. at 257.  In so doing, the nonmovant "cannot rely on the facts in its unverified complaint," but "point to evidence in the record sufficient to establish the alleged facts[.]"  *Solo Serve Corp. v. Westowne Assocs.*, 929 F.2d 160, 165 (5th Cir. 1991).  Furthermore, "Rule 56 does not impose upon the district court a duty to sift through the record in search of evidence to support a party's opposition to summary judgment."  *Forsyth v. Barr*, 19 F.3d 1527, 1537 (5th Cir. 1994) (quotations omitted).  A court cannot grant a motion for summary judgment "solely on the ground that [the nonmovant] failed to respond[.]"  *John v. State of La. (Bd. of Trs. for State Colls. & Univs.)*, 757 F.2d 698, 709–10 (5th Cir. 1985).

However, a court may "accept[] as undisputed the facts . . . listed in support of [a movant's] motion for summary judgment" where it is unopposed. *Eversley v. MBank Dall.*, 843 F.2d 172, 174 (5th Cir. 1991). A court may then grant such a motion where the movant makes a "prima facie showing of [movant's] entitlement to judgment." *Id*.

## ANALYSIS

Thompson contends that it is entitled to judgment as a matter of law on its breach of contract claim because PLM Defendants fail to raise a genuine issue of material fact as to any of the essential elements (Dkt. #23). Thompson also contends it is entitled to judgment as a matter of law on its lien foreclosure claim because the summary judgment evidence conclusively proves the requisite elements (Dkt. #23). Again, PLM Defendants have not responded to Thompson's Motion.[1]

### I.     Breach of Contract

The elements of a breach of contract claim under Texas law are: "(1) the existence of a valid contract; (2) performance or tendered performance by the plaintiff; (3) breach of the contract by the defendant; and (4) damages to the plaintiff resulting from the breach." *Collective Asset Partners, L.L.C. v. Vtrader Pro, L.L.C.*, 578 Fed. Appx. 404, 406 (5th Cir. 2014) (citing *Lewis v. Bank of Am., NA*, 343 F.3d 540, 545 (5th Cir. 2003)). Here, the summary judgment evidence establishes that there is no genuine issue of material fact as to these essential elements.

First, there is no dispute that valid and enforceable written contracts existed. PLM Defendants admit that PLM Assets entered into the Agreements with Thompson for Thompson to provide engineering services on the Project in exchange for PLM Defendants' payment of a lump sum contract price plus reimbursable expenses (Dkt. #6 ¶¶ 15–16, 26). Second, Thompson

---

[1] A party's failure to oppose a motion in the manner prescribed herein creates a presumption that the party does not controvert the facts set out by movant and has no evidence to offer in opposition to the motion. E.D. Tex. Civ. R. 7(d).

performed under the contract when it provided its engineering services pursuant to the Agreements and submitted invoices to PLM Assets (Dkt. #23 Ex. 3 ¶¶ 22:3–23:6; *see also* Dkt. # 23, Exhibit 4). Finally, PLM Assets breached the Agreements, which caused damage to Thompson. PLM Defendants admit that PLM Assets failed to pay the invoices Thompson submitted, and $232,699.22 remains owed to Thompson for its engineering services on the Project (Dkt. #23, Exhibit 3 ¶¶ 19:6–19, 22:11–23:3). PLM Defendants' designated corporate representative, Ron Parker, testified during his deposition that Plaintiff simply "want[s] to be paid for their services" and there is no "dispute" or "conflict" (Dkt. #23, Exhibit 3 ¶¶ 17:16–19).

The Court finds no genuine issue of material fact on any of the elements in the breach of contract claim. Therefore, Thompson is entitled to judgment as a matter of law against PLM Assets.

## II. Lien Foreclosure

Thompson also seeks a judgment declaring the Lien is valid under Chapter 53 of the Texas Property Code, foreclosing on the Lien, and ordering a sale of the Property (Dkt. #23 ¶ 13). "To enforce a mechanic's lien, the lienholder must file a lawsuit and obtain a judgment from a court of competent jurisdiction foreclosing its constitutional or statutory lien." *Crawford Servs., Inc. v. Skillman Intern. Firm*, L.L.C., 444 S.W.3d 265, 268 (Tex. App.—Dallas 2014, pet. dism'd) (citing TEX. PROP. CODE ANN. § 53.158). To prevail on a lien foreclosure claim, a claimant must establish the following: (1) the claimant falls within the class of persons entitled to a statutory lien; (2) the claimant furnished the labor or materials; (3) the debt is valid; and (4) the claimant substantially complied with the statutory requirements for perfecting the lien. *Id*. at 267.

### A. Thompson Falls Within the Class of Persons Entitled to A Statutory Lien

Section 53.021 of the Texas Property Code delineates several different types of persons entitled to a statutory lien. But relevant here is:

> An architect, engineer, or surveyor who prepares a plan or plat under or by virtue of a written contract with the owner or the owner's agent, trustee, or receiver in connection with the actual or proposed design, construction, or repair of improvements on real property or the location of the boundaries of real property has a lien on the property.

TEX. PROP. CODE ANN. § 53.021(c). Thompson is an engineering company, which qualifies as an "engineer" under Section 53.021. *See In re Camareno,* 105 F. App'x 3, 5 (5th Cir. 2004) (allowing a business to attempt to assert a claim); *see also In re Payless Cashways,* 203 F.3d 1081, 1084 (8th Cir. 2000) (referring to the company Amtech as a person under the statute). The mere fact that Thompson is an engineer alone, however, is insufficient to qualify as a person entitled to a statutory lien. Thompson must also have contracted with the owner of the Property. TEX. PROP. CODE ANN. § 53.021(c).

The Agreements were entered into by Thompson and PLM Assets, the purported owner of the Property (Dkt. #1 ¶ 26, 34). However, PLM Center is the record owner of the Property (Dkt. #1 ¶ 39). Thompson contends that it is deemed to have contracted directly with PLM Center pursuant to the "Sham Contract" provision of Texas' mechanic's lien statute, Texas Property Code Section 53.026 (Dkt. #23 ¶ 15).

The Sham Contract provision provides, in relevant part:

> A person who labors, specially fabricates materials, or furnishes labor or materials under a direct contractual relationship with another person is considered to be in direct contractual relationship with the owner and has a lien as an original contractor, if: the owner contracted with the other person for the construction or repair of a house, building, or improvements and that other person can effectively control the owner through ownership of voting stock, interlocking directorships, or otherwise

6

TEX. PROP. CODE § 53.026(a)(2). Under Section 53.026, where a sham contract exists, "the subcontractor is deemed to be an original contractor." *Trinity Drywall Sys. v. TOKA Gen. Contrs., Ltd.*, 416 S.W.3d 201, 211 (Tex. App.—El Paso 2013, pet. denied) (citing TEX. PROP. CODE ANN. § 53.026). Accordingly, under this provision, a subcontractor is placed in direct privity with the property owner for purposes of the mechanic's and materialman's lien statutes. *See Da-Col Paint Mfg. Co. v. Am. Indem. Co.*, 517 S.W.2d 270, 273 (Tex. 1974).

A subcontractor is "a person who labors or has furnished labor or materials to fulfill an obligation to an original contractor or to a subcontractor of any tier to perform all or part of the work required by an original contract." TEX. PROP. CODE § 53.001(13). A subcontractor is a derivative claimant; an original contractor is not. *See First Nat'l Bank v. Sledge*, 653 S.W.2d 283, 285 (Tex. 1983). Whether a lien claimant is an original contractor or subcontractor turns on the actual nature of the contractual arrangements. *Truss World, Inc. v. ERJS, Inc.*, 284 S.W.3d 393, 395 (Tex. App.—Beaumont 2009, pet. denied) (finding that because lien claimant contracted directly with owner, it was an original contractor, regardless of statements in lien affidavit). Because Thompson contracted with PLM Assets to perform part of the work necessary to complete the Project, the Court finds Thompson is a subcontractor for purposes of the sham contract statute.

An owner is in a better position if the lien claimant is a subcontractor than when the claimant is an original contractor, due to certain limitations and procedural requirements placed on a subcontractor. *See Da-Col*, 517 S.W.2d at 273. Thus, in the past owners used an alter ego with whom the owner would make an original contract for the entire improvement. *Id*. The alter ego entity would then contract with persons who would furnish the labor or material for the project, thereby relegating all true lien claimants to the status of subcontractors or derivative claimants. *Id*. The sham contract statute, Texas Property Code § 53.026, prevents this practice. *Id*. The

7

mechanic's and materialmen's liens, therefore, are designed to protect people or entities—like Thompson—who have furnished materials or services for the construction of buildings or other improvements to real property. *CVN Grp., Inc. v. Delgado*, 95 S.W.3d 234, 246 (Tex. 2002). As such, the mechanic's and materialmen's lien statutes of Texas are to be liberally construed for the purpose of protecting laborers, materialmen, and owners. *Cabintree, Inc. v. Schneider*, 728 S.W.2d 395, 396 (Tex. App.—Houston [1st Dist.] 1986, writ ref'd).

Although the record is minimal, the Court suspects PLM Center used PLM Assets as a general contractor-alter ego to contract with laborers on the Project, and thus minimize the true owner's liability—a practice the Texas legislature has clearly sought to prevent. While PLM Center is the record owner of the Property, PLM Defendants admit PLM Center is an entity "effectively controlled by the same ownership as PLM Assets" (Dkt. #6 ¶ 39). Additionally, PLM Defendants have not responded in writing, and have orally communicated to the Court their non-opposition to the motion for summary judgment. As the Texas Supreme Court instructs, "fundamental to the operation of the statute . . . is the recognition that the owner and sham contractor are one and the same." *Da-Col Paint*, 517 S.W.2d at 273. In light of Chapter 53's language and history, along with PLM Defendants' non-opposition, the Court finds PLM Assets and PLM Center are one and the same.

Consequently, Thompson is considered to be in direct contractual relationship with PLM Center and has a lien as an original contractor. TEX. PROP. CODE ANN. § 53.026(a). Thompson, therefore, is within the class of persons entitled to a mechanic's lien under Chapter 53 of the Texas Property Code. However, Chapter 53's language applies only for purposes of asserting a mechanic's lien and does not provide a basis for imposing direct contractual liability on the owner. *Sw. Properties, L.P. v. Lite Dec of Tex., Inc.*, 989 S.W.2d 69, 71–72 (Tex. App.—San Antonio

1998, pet. denied). Therefore, Thompson may not use the sham contract statute as a mechanism to hold PLM Center jointly and severally liable with PLM Assets.

### B. Thompson Furnished Labor and Materials; Debt is Valid

Thompson supplied labor in the form of engineering services (Dkt. #23, Exhibit 3 ¶¶ 21: 1–3). Thompson supplied its services pursuant to valid, written contracts, but has not received payment its due under those contracts (Dkt. #23, Exhibit 3 ¶¶ 22: 3–14). PLM Defendants do not dispute the validity of the lien (Dkt. #23, Exhibit 3 ¶¶ 23: 8–10). Therefore, the second and third requirements are met.

### C. Thompson Complied with Statutory Requirements to Perfect its Lien

Finally, Thompson substantially complied with statutory requirements to perfect its lien. To perfect a statutory mechanic's lien, an "original contractor" must timely file a lien affidavit with the clerk of the county in which the property is located not later than the fifteenth day of the fourth calendar month after the last day of the month in which the original contract has been completed, finally settled, or abandoned. TEX. PROP. CODE ANN. §§ 53.052(a), 53.053(b)(2). The original contract was abandoned on December 4, 2018, when Thompson suspended performance due to non-payment (Dkt. #23, Exhibit 5). Thompson's deadline to file a lien affidavit was April 15, 2019, and Thompson filed the Affidavit on March 12, 2019 with the clerk the county where the Property sits (Dkt. #23, Exhibit 4). Thus, Thompson timely filed the Affidavit in the correct location.

The Affidavit must be signed by the person claiming the lien or another person on the claimant's behalf and "must contain substantially:"

> (1) a sworn statement of the amount of the claim;
> (2) the name and last known address of the owner or reputed owner;
> (3) a general statement of the kind of work done and materials furnished by the claimant and, for a claimant other than an original contractor, a statement of each

9

>       month in which the work was done and materials furnished for which payment is requested;
>       (4) the name and last known address of the person by whom the claimant was employed or to whom the claimant furnished the materials or labor;
>       (5) the name and last known address of the original contractor;
>       (6) a description, legally sufficient for identification, of the property sought to be charged with the lien;
>       (7) the claimant's name, mailing address, and, if different, physical address; and
>       (8) for a claimant other than an original contractor, a statement identifying the date each notice of the claim was sent to the owner and the method by which the notice was sent.

TEX. PROP. CODE ANN. § 53.054. Jerry Basconi, Thompson's President, signed the affidavit on Thompson's behalf (Dkt. #23, Exhibit 4), and so the Affidavit was signed by the person claiming the lien. The Affidavit contained a sworn statement setting forth the amount of the claim: $232,699.22 (Dkt. #23, Exhibit 4). The Affidavit listed the name and last known address of the owner or reputed owner as "PLM Assets, 2675 SE 41 Street, Paris, Texas 75462" (Dkt. #23, Exhibit 4). The Affidavit stated the kind of work done as "Mechanical, Electrical, Plumbing/Fire Protection and Civil Engineering Design Services" (Dkt. #23, Exhibit 4). The Affidavit listed the address of the original contractor and Thompson's name and mailing address (Dkt. #23, Exhibit 4). Attached to the Affidavit was a metes and bounds description of the Project property (Dkt. #23, Exhibit 4-A), which constitutes a legally sufficient mailing description of the property to be charged with the lien. *Blanco, Inc. v. Porras*, 897 F.2d 788, 792 (5th Cir. 1990) (citations omitted) ("[A] land description is 'legally sufficient' within the meaning of Tex. Prop. Code Ann. § 53.054(a)(6) if it contains a 'nucleus' of information that could enable a party familiar with the locality to identify the premises intended to be described with reasonable certainty.").

Finally, within five days after the date the affidavit is filed, a copy of the affidavit must be sent by registered or certified mail to the owner or reputed owner at the owner's last known business or residence address. TEX. PROP. CODE ANN. § 53.055(a). Thompson sent PLM

Defendants a copy of the Affidavit by certified mail, return receipt requested, prior to filing (Dkt. #23, Exhibit 4 at ¶¶5, 9). Thus, Thompson substantially complied with the statutory requirements to perfect the Lien.

### D. Foreclosure is Mandatory

A mechanic lienholder has two ways to obtain payment for his or her services: (1) sue the other party *in personam* for breach of contract; or (2) foreclose on the collateral directly in a judicial proceeding and force the sale of the collateral at auction to satisfy the debt. *Nova Mud, Inc. v. Staley*, 583 S.W.3d 728, 735 (Tex. App.—El Paso 2019, pet. denied). Foreclosure is available "regardless of whether the current holder of the collateral was personally liable on the contract for payment." *Id*. (citing *Crawford Servs., Inc.*, 444 S.W.3d at 268). Because Thompson had a valid debt and perfected its mechanic's lien, the Court has no discretion to deny a judgment of foreclosure and must order sale of the property subject to the lien. *Crawford*, 444 S.W.3d at 271; *see also Seeds v. Edgerton*, 209 S.W.2d 987, 989 (Tex. App.—Eastland 1948, no writ) (holding that when a plaintiff proves valid mechanic's lien on property, plaintiff is "entitled to a foreclosure" of that lien). The Court finds that Thompson is entitled to foreclose its lien and recover its damages against PLM Defendants in an amount not to exceed actual damages: $232,699.22.[2]

---

[2] Texas Property Code Section 53.024 provides that the amount of a lien claimed by a subcontractor may not exceed: (1) an amount equal to the proportion of the total subcontract price that the sum of the labor performed, materials furnished, materials specially fabricated, reasonable overhead costs incurred, and proportionate profit margin bears to the total subcontract price; minus (2) the sum of previous payments received by the claimant on the subcontract. Thus, the Texas legislature specifically delineated the items which could be included in a mechanic's and materialman's lien. The legislature could have provided for the inclusion of prejudgment interest in the lien, but did not do so. Thus, the Court may not include prejudgment interest in the lien. *See Ambassador Dev. Corp. v. Valdez*, 791 S.W.2d 612, 624 (Tex. App.—Fort Worth 1990, no writ). By that same logic, the mechanic's lien statute also does not authorize the inclusion of attorneys' fees in the debt subject to the lien. *Palomita, Inc. v. Medley*, 747 S.W.2d 575, 577-78 (Tex. App.--Corpus Christi 1988, no writ) (modifying trial court's judgment so as to delete the amount of prejudgment interest and attorneys' fees from the amount of the statutory mechanic's lien).

### E. Fees and Interest

Thompson seeks its attorney's fees pursuant to Texas Property Code § 53.158 (Dkt. #1 ¶ 43). Additionally, Thompson seeks pre-judgment interest "at the highest interest allowed by law" (Dkt. #1 ¶ 44).

#### 1. Attorney's Fees Requested Are Reasonable

"In any proceeding to foreclose a lien . . . the court shall award costs and reasonable attorney's fees as are equitable and just." TEX. PROP. CODE ANN. § 53.156. Given the statute's language, the Court does not have discretion on whether to award attorney's fees. *Bocquet v. Herring*, 972 S.W.2d 19, 20 (Tex. 1998) ("Statutes providing that a party 'shall be awarded' . . . attorney fees are not discretionary."); *Inwood N. Homeowners' Ass'n v. Meier*, 625 S.W.2d 742, 744 (Tex. App.—Houston [1st Dist.] 1981, no writ) (recognizing that "[u]nder the general rule of statutory construction, . . . 'shall' is given a mandatory construction."). Thus, Thompson is entitled to an award of its costs and reasonable attorney's fees.

The Court must determine whether the hours claimed by plaintiff's attorney are reasonable or excessive. *See Hall v. Shalala*, 50 F.3d 367, 368 (5th Cir. 1995) (citing *Pierce v. Underwood*, 487 U.S. 552, 570 (1988)). In adjudicating an attorney's fee award, a court first calculates a "lodestar" fee by multiplying the reasonable number of hours expended on the case by the reasonable hourly rates for the participating lawyers. *See Hensley v. Eckerhart*, 461 U.S. 424, 433 (1983); *La. Power & Light Co. v. Kellstrom*, 50 F.3d 319, 324 (5th Cir. 1995). The fee applicant bears the burden of proof on this issue. *See Riley v. City of Jackson, Miss.*, 99 F.3d 757, 760 (5th Cir. 1996); *La. Power & Light Co.*, 50 F.3d at 324. In the second step of the lodestar method, the Court must consider whether the lodestar figure should be adjusted upward or downward

depending on its analysis of the twelve factors established in *Johnson v. GA. Highway Express*, 488 F.2d 714, 717–19 (5th Cir. 1974).[1]

The first step in the lodestar analysis requires a determination of the reasonable number of hours expended by Thompson's counsel, as well as the reasonable hourly rate. Thompson requests compensation for 193.153 hours of service (Dkt. #23, Exhibit 6). The Court has reviewed: (1) Thompson counsels' invoices; and (2) an affidavit in support of the application of $71,788.96 in attorney's fees and $2,500.00 in costs for the prosecution of this case (Dkt. #23, Exhibit 6-A). Thompson asserts that a reasonable hourly rate for Mr. Brian Gaudet, lead counsel in this case, is $450.00, and a reasonable hourly rate for the other attorneys who helped prosecute this case is $350.00 per hour (Dkt. #23, Exhibit 6). The Court finds that the rates and hours requested are reasonable. PLM Defendants do not respond, and the Court finds no reason to alter the lodestar fee.

### 2. Pre- and Post-Judgment Interest

Thompson also requests pre- and post-judgment interest "at the highest interest allowed by law" (Dkt. #1 ¶ 44).

As this is a diversity case applying Texas law, Texas law governs the award of prejudgment interest. *Arete Partners, L.P. v. Gunnerman*, 643 F.3d 410, 412 (5th Cir. 2011); *Harris v. Mickel*, 15 F.3d 428, 429 (5th Cir. 1994). Texas Finance Code § 304.104 states that pre-judgment interest

---

[1] The twelve factors include: (1) the time and labor required; (2) the novelty and difficulty of the questions; (3) the skill requisite to perform the legal service properly; (4) the preclusion of other employment by the attorney due to acceptance of the case; (5) the customary fee; (6) whether the fee is fixed or contingent; (7) time limitations imposed by the client or the circumstances; (8) the amount involved and the results obtained; (9) the experience, reputation, and ability of the attorneys; (10) the "undesirability" of the case; (11) the nature and length of the professional relationship with the client; and (12) awards in similar cases. *Johnson*, 488 F.2d at 717–19.

"accrues on the amount of a judgment during the period beginning on the earlier of the 180th day after the date the defendant receives written notice of a claim or the date the suit is filed and ending on the day preceding the date judgment is rendered." TEX. FIN. CODE § 304.104. The appropriate pre-judgment interest rate is 5% and is calculated as simple, not compounding, interest. TEX. FIN. CODE §§ 304.003(c), 304.103, 304.104.

However, these provisions provide only for statutory pre-judgment interest in wrongful death, personal injury, and property damage cases. TEX. FIN. CODE. § 304.101. Breach of contract cases, where a plaintiff seeks purely economic losses stemming from breach of contract, do not fall within the scope of "property damage cases." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 530 (Tex. 1998). Courts may, however, award pre-judgment interest using the principles of common law, which adopts the same dates of accrual as Section 304.104, accrues at the same rate as post-judgment interest under Sections 304.003(c) and 304.103, and is calculated as simple interest. *Id.* at 531–32. Therefore, pre-judgment interest will be computed at the rate of 5% on the breach of contract damages awarded.[3]

In a diversity case, federal law applies to the calculation of post-judgment interest. *Harris v. Mickel*, 15F.3d 428, 431 (5th Cir. 1994). Post-judgment interest is therefore calculated pursuant to 28 U.S.C. § 1961 from the date of judgment, until it is satisfied. *Tricon Energy Ltd. v. Vinmar Int'l, Ltd.*, 718 F.3d 448 (5th Cir. 2013). Accordingly, the Court finds that post-judgment interest at the rate specified by 28 U.S.C. § 1961 should be applied to the award of damages upon entry of judgment Thompson's favor.

---

[3] Section 304.003(c) states that the rate of pre- and post-judgment interest will be the prime rate, unless the prime rate is less than 5% or more than 15%. The current prime rate is less than 5%, so 5% is the appropriate rate of pre-judgment interest.

## CONCLUSION

It is therefore **ORDERED** Plaintiff Thompson Company, Inc., d/b/a Thompson Ehle Company's Motion for Summary Judgment (Dkt. #23) is hereby **GRANTED.**

It is further **ORDERED** that Plaintiff Thompson Company, Inc., d/b/a/ Thompson Ehle Company shall recover from Defendant Paris Lakes Medical Assets, LLC as follows:

(a) Actual damages in the amount of TWO HUNDRED THIRTY-TWO THOUSAND SIX HUNDRED NINETY-NINE DOLLARS AND 22/100 CENTS ($232,699.22);

(b) Prejudgment interest of 5% annum on such actual damages through the day preceding the date judgment is entered;

(c) Reasonable attorney's fees in the equitable and just amount of $71,788.96;

(d) Post-judgment interest on all sums at the federal rate provided by 28 U.S.C. § 1961(a), beginning on the date judgment is entered; and

(e) Costs of court in the amount of $2,500.00, plus costs incurred in satisfying the judgment.

It is further **ORDERED** that the lien recorded in the Lamar County Property Records at document number 160209-2019 in favor of Plaintiff Thompson Company, Inc., d/b/a Thompson Ehle Company is **VALID** and is **FORECLOSED**, and that the real property described in and subject to the lien, together with all improvements located thereon, are hereby **ORDERED TO BE SOLD** to satisfy the judgment of actual damages in the amount of $232,699.22; that a special execution and order of sale in foreclosure shall issue, commanding the sheriff to levy upon said property, and after having the same appraised as provided by law, to proceed to advertise and sell the same as provided by law and apply the proceeds arising from sale to be used to pay the amounts awarded.

**IT IS SO ORDERED.**
SIGNED this 22nd day of December, 2021.

15

_____
AMOS L. MAZZANT
UNITED STATES DISTRICT JUDGE